UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| DELISHA YOUNG, ET AL., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| VS. | )    No. 18-2157-JDT-tmp |
| | ) |
| AMY WEIRICH, ET AL., | ) |
| | ) |
|     Defendants. | ) |

ORDER GRANTING MOTIONS TO PROCEED *IN FORMA PAUPERIS*,
ASSESSING PLAINTIFF LEE'S *PRO RATA* FILING FEE UNDER THE PLRA,
DENYING MOTION FOR SUMMARY JUDGMENT, DISMISSING COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

On March 7, 2018, Plaintiffs Delisha Young, Tatyana McGee (T. McGee), Emma McGee (E. McGee) and Wendolyn Lee, booking number 18103194, filed a *pro se* civil complaint. (ECF No. 1.) Plaintiff Lee is incarcerated at the Shelby County Criminal Justice Center (Jail) in Memphis, Tennessee, and it appears he also was incarcerated when the complaint was filed. Each Plaintiff also filed a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Clerk shall record the Defendants as Amy Weirich, District Attorney General, and Chris Craft, Criminal Court Judge, both in the Thirtieth Judicial District of Tennessee.

Federal law provides that the "clerk of each district court shall require parties instituting any civil action, suit or proceeding in such court, whether by original process,

removal or otherwise," to pay a filing fee. 28 U.S.C. §§ 1914(a)-(b). [1] To ensure access to the courts, however, 28 U.S.C. § 1915(a) permits an indigent plaintiff to avoid payment of filing fees by filing an *in forma pauperis* affidavit. In this case, Plaintiffs Young, T. McGee and E. McGee have submitted properly completed and executed *in forma pauperis* affidavits. The information set forth in those affidavits satisfies Plaintiffs' burden of demonstrating that they are unable to pay the civil filing fee. Accordingly, the motions to proceed *in forma pauperis* filed by the three non-prisoner Plaintiffs are GRANTED.

As stated, it appears that Plaintiff Lee was incarcerated when this case was filed. Under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b), a prisoner bringing a civil action must pay the filing fee required by 28 U.S.C. § 1914(a). Although the obligation to pay the fee accrues at the moment the case is filed, *see McGore v. Wrigglesworth*, 114 F.3d 601, 605 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013), the PLRA provides the prisoner the opportunity to make a "down payment" of a partial filing fee and pay the remainder in installments. *Id.* at 604. Therefore, the Court GRANTS Plaintiff Lee's motion to proceed *in forma pauperis*, and he is assessed his $87.50 share of the $350 filing fee in accordance with the terms of the PLRA.

---

[1] The civil filing fee is $350. *See* 28 U.S.C. § 1914(a). The schedule of fees set out following the statute also requires the Clerk to collect an administrative fee of $50 for filing any civil case. However, the additional $50 fee does not apply if a plaintiff is granted leave to proceed *in forma pauperis*.

Accordingly, pursuant to 28 U.S.C. § 1915(b)(1), Plaintiff Lee is ORDERED to cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust account officer at Plaintiff Lee's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to Plaintiff Lee's trust account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust account officer shall collect them and pay them directly to the Clerk of the Court. If the funds in Plaintiff Lee's account are insufficient to pay the full amount of the initial partial filing fee, the trust account officer is instructed to withdraw all of the funds in the Plaintiff Lee's account and forward them to the Clerk of the Court.

On each occasion that funds are subsequently credited to Plaintiff Lee's account the trust account officer shall immediately withdraw those funds and forward them to the Clerk of the Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust account officer shall withdraw from Plaintiff Lee's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10, until his $87.50 share of the filing fee is paid.

Each time the trust account officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and submit it to the Clerk along with the payment. All payments and account statements should be sent to:

Clerk, United States District Court, Western District of Tennessee,
167 North Main St., Rm. 242, Memphis, TN 38103

and shall clearly identify Plaintiff Lee's name and the case number as included on the first page of this order.

If Plaintiff Lee is transferred to a different prison or released, he is ORDERED to notify the Court immediately, in writing, of his change of address. If still confined, he shall provide the officials at the new facility with a copy of this order.

The Clerk shall mail a copy of this order to the official in charge of trust fund accounts at Plaintiff Lee's prison. The Clerk is further directed to forward a copy of this order to the Director of the Jail to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

The allegations of the complaint are somewhat convoluted, but Plaintiffs allege that Plaintiff Lee was arrested on rape charges after his step-daughter, Plaintiff T. McGee, accused him of raping her when she was fourteen years old. (ECF No. 1-1 at PageID 4.) The rape charges remain pending. Several months after Lee's arrest, T. McGee recanted her accusation of rape and stated instead that she artificially inseminated herself with Lee's sperm. (*Id.* at PageID 4-5; *see also* ECF No. 1-2 at PageID 6.) Plaintiff E. McGee, who is T. McGee's mother, asserts that she gave T. McGee a condom with Lee's sperm in it and told her to throw it away, but T. McGee instead took the sperm and inseminated herself with a syringe. (ECF No. 1-3 at PageID 8.) Plaintiff Young, who is T. McGee's sister, maintains that she helped T. McGee inseminate herself. (ECF

No. 1-4 at PageID 9.) As a result, T. McGee became pregnant and gave birth to a child. (*Id.*; *see also* ECF No. 1-1 at PageID 5.)

Plaintiff T. McGee now alleges that Defendant Weirich, the Shelby County District Attorney, threatened to put her in jail if she did not say she was raped by Lee. (ECF No. 1-1 at PageID 5.) When T. McGee recanted and submitted her statement and corroborating statements by her mother and sister, Weirich allegedly became angry and refused to drop the rape charges against Lee. (*Id.*)

Plaintiff Lee has submitted various amendments to the complaint, the first of which was filed on September 7, 2018. (ECF No. 12.) He alleges that T. McGee accused him of rape after she became angry with her family. (*Id.* at PageID 48.) Plaintiff T. McGee and Weirich allegedly were in a gay relationship, and Weirich convinced T. McGee to come to Memphis to press charges against Lee because he knew of that relationship and had made derogatory comments about Weirich on Facebook. (*Id.* at PageID 48-49.) However, Lee alleges that even when T. McGee first made her false accusation, she stated the events occurred in West Memphis, Arkansas, not in Memphis, Tennessee; therefore, he contends Tennessee has no jurisdiction in the criminal proceeding. (*Id.* at PageID 49-50.) Weirich also allegedly told T. McGee that she could get Defendant Craft, a Criminal Court Judge, to help her convict Lee, so T. McGee should keep quiet about it. (*Id.* at PageID 50.) Lee alleges that Weirich was arrested by the FBI for false imprisonment, tampering with evidence, conspiracy, and sexual battery against Plaintiff Young. (*Id.*) He further alleges that it is a conflict of interest for

5

Weirich to prosecute him when it was Young who had her arrested.[2] (*Id.*) Lee also alleges that Defendant Craft issued an order for him to undergo a mental evaluation. (*Id.*)

Plaintiff Lee's second amendment was filed September 25, 2018. (ECF No. 13.) Lee repeats his allegation that Weirich was arrested, stating that she appeared in federal court for issuing false indictments.[3] (*Id.* at PageID 62.) A *pro se* motion which Lee filed in his criminal case is attached, in which he alleges that Weirich forged the grand jury foreperson's name on the indictment; therefore, he contended he was never properly indicted and the criminal court was without jurisdiction. (ECF No. 13-2 at PageID 64-65.)

On October 11, 2018, Lee filed a motion for summary judgment. (ECF No. 14.) This case is being dismissed; therefore that motion is DENIED.

Lee sent a letter to the Clerk of this Court, which was docketed on November 1, 2018, in which he again repeats some of his allegations and also claims that Weirich was found guilty of withholding evidence but did not go to jail. (ECF No. 17.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

---

[2] The allegation that Weirich was arrested by the FBI or any other law enforcement agency appears to be demonstrably false. There are no charges pending against Weirich in any federal or Tennessee state court, and such a high-profile arrest would have been widely reported by the media.

[3] Lee also appears to be attempting to add several defendants, including the Shelby County Sheriff, the Shelby County Board of Supervisors, the Shelby County Mayor, and an Assistant District Attorney. (*Id.*) However, none of the individuals are identified, and there are no factual allegations made against them. Therefore, the Court DENIES leave to amend to add those defendants.

6

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). "Any complaint that is legally

frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Id.* (citing *Neitzke*, 490 U.S. at 328-29).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

*Id.* at 471 (citations and internal quotation marks omitted).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants.");

*Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

The complaint is filed on the form used for commencing actions pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Any claims that Plaintiffs Young, T. McGee and E. McGee are attempting to assert on their own behalf fail to state a claim under § 1983, as the complaint does not explain how Plaintiff Lee's arrest and prosecution violates their own personal

constitutional rights. The fact that Defendant Weirich did not drop the charges against Lee even after T. McGee's recantation does not amount to a constitutional violation against McGee herself. In addition, general allegations that Weirich is harassing their family do not state a constitutional claim.

Plaintiff Lee is asserting a claim of malicious prosecution. In order to succeed on such a claim, he must show the following:

> First, . . . that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, . . . that there was a lack of probable cause for the criminal prosecution. Third, . . . that, as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty . . . . Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (citations, internal quotation marks and brackets omitted). In this case, Lee has failed to state a claim for malicious prosecution because the criminal proceeding is ongoing; therefore, he cannot show that the prosecution was resolved in his favor.

Furthermore, both Defendant Weirich and Defendant Craft are entitled to absolute immunity for the actions taken in the course of their duties as prosecutor and judge. Prosecutors are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). "A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity." *Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012).

Likewise, judges are absolutely immune from civil liability in the performance of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 363 (1978); *Bright v. Gallia Cnty., Ohio,* 753 F.3d 639, 648-49 (6th Cir. 2014); *Leech v. DeWeese,* 689 F.3d 538, 542 (6th Cir. 2012). The "touchstone" for applicability of absolute judicial immunity is "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993). In this case, Lee specifically alleges only that Defendant Craft ordered him to undergo a mental evaluation, which is within the scope of his judicial function. Therefore, any claim against Defendant Craft is barred by judicial immunity.

To the extent that Lee may be asking this Court to intervene in his criminal proceeding and order the charges dismissed, the Court cannot do so. Under the Anti-Injunction Act, 28 U.S.C. § 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Sixth Circuit has explained that "[t]he Act thereby creates 'an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions,' which are set forth in the statutory language." *Andreano v. City of Westlake*, 136 F. App'x 865, 879-80 (6th Cir. 2005) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)). Federal injunctions against state criminal proceedings can be issued only "under extraordinary circumstances where the danger of irreparable loss is both great and

immediate." *Younger v. Harris*, 401 U.S. 37, 45 (1971) (internal quotation marks and citation omitted). The Supreme Court has emphasized that

> [c]ertain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

*Id.* at 46. In this case, Lee does not allege the type of extraordinary circumstances that would permit the Court to become involved in his state-court criminal matter.

For all of the foregoing reasons, the complaint is subject to dismissal in its entirety for failure to state a claim.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that leave to amend is not warranted.

In conclusion, the Court DISMISSES the complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is DENIED.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by any Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. Therefore, it is CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3) and Federal Rule of Appellate Procedure 24(a), that an appeal in this matter by any Plaintiff would not be taken in good faith. Accordingly, leave to appeal *in forma pauperis* is DENIED.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE